Morning. Welcome to the circuit. I'm Judge Dennis, together with Judge Southwick and Judge Hope, will be appearing in this virtual oral argument of your case. So, Mr. Perry, you're first. Your time is 15 minutes with 55 on the button, and then we'll hear from Mr. Barrett. May it please the court, my name is Alan Perry, and I'll be arguing for all of the appellants. Primary issue on this appeal is whether there's a reasonable construction of the two provisions at issue which allow both of them to be given effect. Many states recognize the desirability of harmonizing contractual provisions, but the cases in our brief demonstrate the very strong emphasis that Mississippi law places on harmonizing apparently inconsistent provisions in order to give effect to all provisions. Mississippi law, and more recently Waltman in particular, says both of these provisions should be given effect if there is any reasonable interpretation or construction that permits them to be harmonized. A court interpreting a contract is not free to choose the construction that the court might view as the most reasonable or most likely if that construction would render another meaningless. If there's more than one reasonable construction, court must choose the reasonable construction that gives effect to all provisions. Mr. Perry, let me ask you, it does seem to me that your argument and your contrast with the various cases that have been pointed out to us by both sides, with the comparisons of the two clashing provisions in each of those cases, you're asking us basically, it seems to me, to hold as a matter of Mississippi law at least that an arbitration clause will always the forum selection litigation provision to just the preliminary and the post-arbitration matter. That absent something that's as explicit as it can be, which you wouldn't necessarily have, probably would never have, the arbitration clause has always gone to prevail. Now that maybe that's the right answer, Mississippi law, but isn't that a fair assessment of your argument? That would be a good rule to make for this court. I don't think this court has quite gone that far yet. I'm asking what you're trying to get us to do. Oh, well, I am trying to get you to do exactly what Motorola did, which recognized that if you have an arbitration, a forum selection clause that is silent as to arbitration, more likely than not, the intent of the parties, which is the goal of Mississippi law, was to arbitrate. And you said there would never be you would find it not explicit. There are a number of them. The Hebronville case that Judge Dennis decided at the beginning of the forum, so it said except for these things. That can be language and people can write it if they want to. If it's silent, though, it would be a prudent thing to do to say, what did the parties intend? Because that's what Mississippi law says we should look at. And it would be extremely rare for somebody sitting down with an arbitration clause, say, you know, I really don't intend to arbitrate. I'll put in a forum selection clause and not say a word about arbitration. So from the silence, you can get to the intent of the parties, which is the goal of Mississippi law. And that should be enough by itself. And a lot of courts have held that it is. And Motorola in the Fifth Circuit observed that a lot of courts have held that. And it would be a good rule. But here there's more than that. Because like Motorola, we looked at the dictionary words in the forum selection clause, and they are consistent with it being the forum selection clause being limited to matters that must be decided by a court. And that is the exact process that Motorola used. So while I don't think Motorola went quite as far as you suggested, it would be a good rule. But you don't have to go that far in this case. Your point, I think, is that let's not read arbitration clauses as surplusage and assume that the parties were engaged in sort of this, I don't know if it's gibberish or just the parties just weren't very smart about this. I think that's your main point is, why would they engage in arbitration clause other than to arbitrate? And the forum selection clause obviously is for choosing a forum when these issues end up as they always do in litigation. That's exactly the point, Judge Ho. In fact, that is Mississippi law. I think it's quoted on page 30. It's the Newton County bank case that says, you don't charge parties with having intentionally written down things in agreement that are inconsistent. You assume the contractors are intelligent, not stupid. Well, I mean, you hope so, but you've got to draw intent from the words, and you don't try to do an intelligence test to discover the words. It's the text. Well, counsel, it seems to me the point that we're still sort of circling around. If you look at the engagement letter, there's language in there that your friend in the middle of my screen, but he may be elsewhere on yours, says are very important to this, the exclusive jurisdiction, the strength of saying any claim dispute, et cetera. You all know that those three sentences are the key sentences of that paragraph better than I do. I really am hearing from you that the imperative on a Mississippi law may be stronger than other states. We really don't have to decide. We just have to decide how strong it is in Mississippi, that all that is sort of beside the point, that you have an arbitration clause that's not going to work. It's not going to have any effect if you give the form selection clause, if you read it and compare it to some others and decide this language is stronger on litigation than some of these other cases, and let that control on how you read the two together. You're going to really, under Mississippi law, have to try to make both clauses work, and that will always end up where you want us to go in this case. And I guess I'm repeating myself, but I'm trying to get you to tell me, are you really saying the language of the form selection clause is almost irrelevant? No, sir. You could write language in a forum selection clause that said, except for these things, we'll do it in court. You know, except the matter is going to be arbitrated, we'll do it in court. You could write that. You could write it the other way. You could write it any way you want to. The language is not irrelevant. Well, let me put it this way. So long as the two clauses don't refer to each other or seem to be aware of each other, the arbitration clause to be given, in effect, is going to have to dominate over the form selection clause. Well, the arbitration clause here is not quite silent. It understands that there would be a place for litigation to challenge the award. So it understands that. Are you asking us to read the form selection clause as surplusage, or just that it would apply when there's litigation? Oh, it applies anytime there's litigation. This case is the perfect example. We think that this case should have been filed in Mississippi. We would have objected had it been filed in Alaska. That's what that clause does, and that's what it's intended to do. Litigation about the arbitration, or that is not foreclosed by the arbitration clause. Exactly. If there's going to be... I'm sorry, interrupted. If there's litigation that has to be decided by a court, which is the way we read the this case, just as Motorola said, that case had to be filed in the Texas court, and it would also include any review of the arbitration award to the extent that's possible. Judge Southwood, your question earlier, were you referring... Did you want to talk about the third sentence? I'm going to get to that, but I couldn't tell if that was included in your question or not. Well, I did refer to it, allude to it more than the arbitration clause alludes to the form selection clause, but I do want to hear what you say. If we find a little bit more of a question on Mississippi law of how hard we're supposed to work at this, make it easier by telling me what you make of the form selection clause language fitting better than your opponent thinks. Okay, why does it fit better? Okay, jurisdiction is a word defined in Blacks, and if you did an online search of dictionary, online definition, you'd look for dictionary jurisdiction, definition jurisdiction, you'd find a lot of clauses say that's when a court exercises power to exercise decree. That's equally, that's just as good of analysis as Motorola did looking in the dictionary to see what suit and proceeding did, and so I find that language, and come to the exact same conclusion that Motorola did from the, and almost on the same basis. So that language is, it seems to me, and we haven't heard any reason why that construction doesn't work, not in the trial court, not in the briefs here, and if we hear it today, it'll be for the first time. The third sentence, well, before I get there, I do want to talk about the third sentence because they made a big point of it, but in addition to that, there's another reason why ours is reasonable. Lots of courts have interpreted forum selection clauses, and in many of them include jurisdiction, as applying to cases where matters have to be decided by a court. The question is whether our construction is reasonable. If lots of courts have held it, it's probably reasonable. Hard to hold it unreasonable, and finally, I guess that takes me to the third sentence, which I want to talk about it because that's a new argument on this appeal. In our original filing in the trial court, we said that the third sentence did not affect arbitration, and we explained why, and that's at footnote four, the record on appeal at 156, and the receiver never responded to that point and never made any argument in the trial court based on the third sentence. In trial court, the receiver argued that the forum selection as a whole was inconsistent with the arbitration provision, and that's at page six and ten of their record on appeal, 175, 179, and moreover, the forum selection provision in its entirety was the basis for the trial court's opinion, and that's the record on appeal at 568, and he said the party, this is quoting, the parties agreed that these courts would have quote exclusive jurisdiction over quote any such claims. All objections to that forum or jurisdiction were explicitly waived. I have, in my argument, said that boldly. It's not in quotes in there, but it is clearly referring to the jurisdiction in the second sentence, so the argument based on the third sentence is brand new here, but since they've raised it, I'll address it. First, the third sentence should be read and certainly can be second sentence, and that's exactly how a judge read it, and because it's reasonable, it should be read that way under Waltman, and so read that way, the third sentence merely says there can be no objection to the name courts exercising the adjudicatory power of a court to decide a case or decree, and then finally, even assuming the third sentence could be read by freestanding, not construed in accordance with the second sentence, it had no effect in this case because we've not objected to receiver filing it in this case. This case in this district is the right place to file it. We've got to decide it somewhere, just as in Motorola, and we've not objected to it as inconvenient or not raised any jurisdictional objections, so there's nothing to and that's the third sentence. Are there any further questions about our reading of the forum selection clause or why it is reasonable? Go ahead. I think you do have my argument. The rest of the points are pretty well covered in the brief. I'd certainly be glad to answer any questions about the other issues if there are any from the panel. Okay, thank you, sir. Thank you. You may proceed, Mr. Barriott. Can you hear me? You're on mute, sir. There we go. Thank you. I apologize. I may please the court, Brent Barriott. I represent Allison Mills in her capacity as the receiver of Arthur Lamar Adams and Madison Timber Properties. Judge Southwick, you never received an answer to your question because the appellants are unable to answer your question. The fact of the matter is that if you accept their argument, you're accepting the premise that whenever there are broad provisions that both provide for dispute resolution in litigation and in arbitration, the arbitration provision will always prevail. That's what's being asked for. I will say, Mr. Perry gave me something of an answer with due respect to both of you, and that is that under Mississippi law, the imperative is to make both conflicting provisions work, if at all possible. The rule of reason, you will say, will prevent it, your argument in your brief does. But I do think that is what he's saying, and whether he didn't give me a yes or no, there is some support for that on Mississippi law, that if you can do it, do it. We must. And the only way to give effect to both provisions is something along the lines of what Butler Snow is arguing. So tell me why that doesn't work. Well, I think it doesn't work for at least three reasons. And the reality, of course, is that the Mississippi courts have called for reasonable constructions and reasonable attempts at harmony and reconciliation. This, in fact, is a fabrication. We're going to graft on language that does not The state and federal courts in Mississippi shall have exclusive jurisdiction in relation to any claim, dispute, or difference concerning this engagement contract and any matter arising from it. The parties hereto irrevocably waive any right they may have to object to any action brought in that court. The arbitration provision, the language is somewhat unusual, says in the Those which could be resolved by what perhaps litigation, the parties, or any of their respective that involves legal rights, remedies, and so forth, should be arbitrated pursuant to the Federal Arbitration Act. I would submit to you that the common sense reading of these is that when the parties drafted up the engagement letter, which was unique to this engagement, they meant what they said, that we would have as dispute resolution any federal or state court for litigation. Where would you arbitrate under your theory? The arbitration is simply surplus verbiage as much as in the standard conditions that were referred to. Under your theory, we would never use the arbitration clause? In this specific case, the answer that would be yes, Judge Ho. There are multiple provisions in the standard conditions. Are we not supposed to construe provisions as surplusage if we can avoid it? If you can avoid it, here you cannot. As in, the fact of the matter is there is other language in the standard conditions that is surplus. For example, if there is never to be litigation, why do we have a lengthy provision in this very contract calling for waiver of jury? Hold on, hold on. Just to be fair, I don't think the other side is saying there shall never be litigation. We are litigating this very case after all. Arbitration, I'm sure you're not naive about arbitration. We litigate arbitration cases all the time. So I'm asking both sides, are you rendering any provision of this agreement surplusage? The other side is saying no, they are not. And I think what you're saying is yes, you are reading the arbitration clause as surplusage. I am indeed, as this very court did in Sharp. There are simply occasions when there is a direct conflict between a broad and mandatory dispute resolution provision calling for litigation and a broad arbitration provision. That is precisely what occurred in the Sharp decision, and that's what is presented here. Let me ask you about Sharp and see if you have a case that to me would match better. Sharp has provisions, there's law in Mississippi that you try to read provisions of an agreement entered all in the same contract, consistency, consistently, in harmony. And that includes agreements executed at the same time. Sharp had whatever they called it, a manual, whatever that was executed sometime later to take care of things it didn't like. One side didn't like about the different case than here. You can tell me why it's not, but do you have a case, I mean, this idea of surplusage or writing out of the contract such an important provision is troubling. What is your best case that's not Sharp, because I don't think it's a very good case and you do, but what's your best case that really would allow us, and then we have to decide whether the law of that agreement by the same parties, whatever else you want to add, you can just ignore because it's inconsistent with something else? Well, I think twofold. One, first of all, I think to the Sharp decision itself noted that the parties acknowledged that the earlier agreement and the latter agreement were one and the same entity, that those two were part of a whole that governed the entirety of the relationship. So I don't think the serial execution was meaningful to that court. Further, the Sharp decision itself relied heavily on applied energetics, which I think did have these provisions in a single contract, if memory serves. Okay, thank you. So recognize that this standard conditions contains a variety of language that parties made no effort to integrate with the contract that they signed. For example, the engagement letter. For example, there is the waiver of jury provision. There is further limitations on liabilities and provisions with respect to indemnification that I don't believe Butler Snow would seriously contend actually applied it. Butler Snow, as an aside, is asserting it's entitled to arbitrate because it is an affiliate of Butler Snow Advisory Services. This contract calls for the client to indemnify Butler Snow Advisory and Butler Snow, presumably as an affiliate, for Butler Snow's own acts unless those acts are fraudulent or involve willful conduct. It limits the claims, damage claims, against Butler Snow per the face of the agreement to the amount paid for its services. Again, plainly unenforceable. So the reality, Judge this standard boilerplate conditions and simply attaching it has left us with the reality that there is no clear way to integrate these. They simply do not fit together, and that's why we are left at the end of the day with two provisions that are all inclusive, are mandatory, and neither admits the possibility of the other. What was found in Sharp? And I submit to you again that the plain and thoughtful reading here is that they meant what they said in the engagement contract and slapped on these standard conditions by reference to cover additional areas such as publication, confidentiality, the client's obligation to update financial information, and the like. These standard conditions on their face permit Butler Snow to take on any other clients. Plainly cannot do so. It would have conflicts. So these simply are not intended to and weren't integrated. What we do know, what we do know is that the engagement contract, which is unique to this engagement, makes express that the courts are to be the exclusive jurisdiction, and I submit the exclusive jurisdiction language here is the same as it was in Sharp, the power to adjudicate on the merits. At the end of the day, something, let me ask you something about a point you're making that in the attachment to the engagement letter, 6.4 waiver jury trial, you think that's significant. Is there something on our Mississippi law or some other law that requires that to be bold? You seem to think it's significant and is at least in bold, but I'm wondering if that's something under either some sort of regulatory provision or under state law that requires that not important to the case, but I'm wondering why it was given such heightened attention in the agreement. My recollection from years ago when I first encountered a provision like this, it was issued by a case involving a Boston bank, was that the view was by putting it in bold, the party seeking to enforce it could point out that it was central, that it was plain and obvious, and that the party who had signed it would be knowingly, could not be claiming that he was not knowingly aware that he was waiving his constitutional right to a jury. That's good. That's good. You can move on. Thank you. Fair enough. At the end of the day, I submit to you that the appellant's demand for the Trump provision, that the arbitration clause will always trump the dispute resolution clause calling for litigation, that's what they're asking for here today. You always graft on this language that when it says the court shall have, quote, exclusive jurisdiction in relation to any claim. I guess I would just resist your characterization that one is always trumping the other. What I see is you've got an arbitration clause that I don't think we can just ignore. And then you've got a forum selection clause that also must be respected. And we are respecting if we were to make sure that all litigation arising out of preceding or not otherwise subject arbitration is subject to that forum selection clause. I grant you that the word exclusive jurisdiction is interesting and creates some tension. But I don't think it's unreasonable to say exclusive jurisdiction just means if you're going to go to court, it shall be exclusively in the Mississippi courts and to the exclusion of courts in other states. Well, but it has to be read in relation to the balance of dissent, which is in relation to any claim, dispute, or difference concerning the engagement contract. The exclusive jurisdiction is not merely that to ensure that parties go to arbitration, it is in relation to any claim, dispute, or difference concerning this contract, this engagement contract. It's exclusive jurisdiction in relation to anything under this contract. Does this contract have an arbitration clause? It does. Right, so it's exclusive jurisdiction in relation to any arbitration dispute that results in litigation. But it's any claim, dispute, or difference, which I submit would speak to any matter as it speaks to much broader than simply the arbitration provision. These are, as the sharp court said, I believe, in looking at like language, all-encompassing and mandatory. All-encompassing, so when I use the term Trump, what I mean is when you in fact have all-encompassing and mandatory provisions such as this, an arbitration provision and in a the appellate's position would be the arbitration always trumps because you graft onto the dispute resolution provision the language that it is to have exclusive jurisdiction to enforce the arbitration provision. Pardon my misunderstanding your argument. Why do you think SHARP helps you? Because in SHARP, I thought the language of the forum selection clause is actually, if anything, even weaker than the one here and specifically allows for the arbitration clause to be bumped out. Why do you think SHARP even applies one way or the other? Why does it help you? Well, because there the court concluded that the SHARP dispute resolution clause, as they referred to it, which said you will go to mediation and if you're unsuccessful then you will go to litigation in a variety of courts with a non-exclusive jurisdiction. The court concluded that those, and I don't disagree, this is even more assertive. I see what you're saying. Your point is in SHARP, if the parties in this case, sorry let me start over, your point is in this case if the parties had wanted the two to coexist you have to write it the way SHARP wrote it. Correct. And the fact that this case does not have SHARP type language means that you don't reach the SHARP results. Well, the SHARP result was that they are there, that the both provisions were mandatory, and I'm quoting, all-inclusive mandatory and neither admits the possibility of the other. That's precisely the situation we're faced with here. Right. In SHARP, the foreign selection clause made itself subservient to the mediation clause. It's the mediation. Whereas here, your point is the foreign selection clause doesn't make itself subservient to the arbitration clause. Right. Absolutely. We go, here it is. Absolute. We are going to court. That's the language that was chosen. Is there any language in SHARP suggesting that the absence of that language means that the result would be the opposite? Not that I'm aware of. That's not the way. But you're inferring. I take it you're logically inferring. Yeah. Okay, fair enough. Let me ask you something about the district court's analysis. After determining that the provisions were in hopeless conflict, he turned to the canon of construction about interpreting against the drafter. Seems to me that might have been premature. The Waltman case that both of you are aware of, and at least was cited in your friend's brief, if not in your own, says no contract provision shall be construed as being in conflict unless no other reasonable interpretation is possible. But then it says, we don't turn to reading against the drafter, it says where a repudency is found between clauses. The clause contributing most essentially to the contract is entitled to the greater weight. What do you make of that in this case? Well, I would say that that which was selected for this specific engagement contributes more to this case than what is one of a number of standard conditions taken from the standard conditions that apply to every Butler advisory snow advisory service, pardon me, engagement. Well, that seems like an unusual idea. What's your authority that we construe in favor of specific unique provisions over standard clauses? Well, as I understand the general rules of construction of contracts is you prefer the specific to the general and you prefer that which was selected by the parties. That's very different. The specific control of the general is about terms. It's not about how common these provisions are to other contracts. I understood. But first of all, of course, the opinion we're citing, Waltman, that is taking a quote from Amjur that really had no application of the facts there, but I'll turn to that in a moment. If the question becomes which is more central, what would suggest just looking at the totality of what the parties did was more central from their intent, if that's what the question we're seeking to answer, what were they most focused on? I think plainly the engagement contract. That is, after all, what they actually negotiated. Why is it more plausible to say the parties wanted arbitration because they pulled out their standard arbitration clause to make sure that they had arbitration? But given the nature of this particular engagement, they wanted to make sure any litigation involving this contract, arising out of arbitration, perhaps, would be in Mississippi as opposed to another state. Well, I think the district court got it right. If that had really been what these attorneys wanted to do, they would have been more careful in the language chosen in the engagement contract. It strikes me that if what they were really seeking to do was to put together a governing law provision that made clear that the courts in Mississippi were to ensure the enforcement of the arbitration provision, they might well have said that or said something that remotely suggests that, which they have not. I think I agree with you that surely they could have done sharp type language to make this amply more clear. I think where I hesitate to be candid is why that language is required. At the end of the day, your task, as instructed by Mississippi law, is to come up with a reasonable interpretation of what the parties did. Your given the reality that these guys are just in odds, that critical language is missing. You cannot harmonize unless you accept the premise that when you have two encompassing clauses, one for litigation, one for arbitration, that the arbitration controls. That is where sharp tells us, no, we go through this analysis. Because the sharp court could have come to the exact same point by simply saying the arbitration provision can be enforced by simply recognizing the reality that the district court has authority to and was designated to enforce the arbitration. We spent a good bit of time on Motorola, and I see my time is ending. But the Motorola court, I suggest, got that very concept by noting that the forum selection clause made reference to in contrast to a much broader arbitration clause that the legal proceedings were those necessary to enforce the arbitration. Here we have, in fact, the reverse of that with the broadest clause being that which sends us to the district court. Thank you so very much. Thank you, Mr. Berry. Happy holiday weekend all. Thank you. Same to you. Mr. Berry, you have, I think, five minutes. Yes, sir. First, there's no merit to the suggestion that the letter is nor negotiated than the terms and conditions. The signature line makes it clear that they were doing both. I saw the reference in the brief filed by the receiver that says the terms and conditions were not negotiated. There was no record evidence of that. And there is no showing that one was more negotiated than the other. So saying they really meant this and really didn't, that's pure pulling it out of the air. Next, the language in the arbitration agreement that's bolded, I see that in Judge Southwick. I see that in a lot of cases, a lot of documents where there are arbitration provisions, and it's kind of to warn people that they're giving up an important right, and it's just, it's almost, it's in a great number of arbitration contracts. If that wasn't an arbitration provision, that was the seal of trial. Yeah, the waiver, the waiver trial and the arbitration provision is often bolded, not in this one. But I meant to be saying the waiver, and you find it when there is often an arbitration clause. I just see it as a matter of almost custom. Second, about the agreement, I guess a jury trial, there could be a jury trial as to the execution of the agreement. It's not a bad thing to put in there. But I'd like to talk most about Sharp because I don't really quite recognize it as the same case that I read. Remember that Sharp cited not only Motorola, but also Bank Julius Bayer that argues for a very broad rule of giving effect to the arbitration provision if the form selection provision is silent as to arbitration. Next, the facts are not as I think they were described. I think Judge Southwick got it right. You have a contract, it's later imposed, a later imposed contract, years later, arbitration provision, and it was not, it normally would have superseded the other one. And the court held, well, no, it's not going to supersede it because the original contract says it can't be modified except in writing. So we have two vastly different documents divided in time and absolutely no reason to think that the parties intended to enforce them all. And then you get to the- When you refer to Bank Julius, you're talking about the quote in Sharp, the forum selection clause can be understood as complementary to an agreement to arbitrate. Uh, it's on 916. I think I, uh, yes. That's making, that's making exactly your point. Yes, sir. Within Sharp itself. Yes, sir. And of course, the, there is no similarity between that very long dispute resolution provision that's not even quoted in full in the Fifth Circuit opinion because it's so long. But, uh, the opinion does point out on page 916 that, uh, together these provisions create a system in which claims will be submitted to this jurisdiction of a court if non-binding mediation is either unproductive or not required. Uh, there's much, much different language, uh, uh, really messes to what exactly the contract was. And of course, the fourth plaintiff, they enforce the arbitration provision, uh, even though it was imposed later. Uh, so I don't think it stands for the, the broad, uh, reading that, uh, my friend has given to it. And certainly depends on the language of the, of the agreement and the language there is very different. Um, he said it cited applied energetics. That's the case where that turned on the fact that there was a later amendment of an earlier agreement. And finally, uh, just the suggestion that perhaps they could have been more careful. Well, this Mississippi rule in Waltman applies even if people make mistakes, thank goodness for us all. And, uh, it usually applies when people have made mistakes. You don't say, well, they could have done it better. So we'll just hold it against them. I think my time is up, your honor. Thank you, sir. That, uh, brings us to the end of the cases we have for oral argument today.